IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **PAULA DENISE FORTNER,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Civil Action No.: 4:12-CV-00986-RDP |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **Commissioner of** } | |
| **Social Security,** } | |
| } | |
| **Defendant.** } | |

### MEMORANDUM OF DECISION

Plaintiff Paula Denise Fortner brings this action pursuant to Title II of Section 205(g) and Title XVI of Section 1631(c)(3) of the Social Security Act (the Act), seeking review of the decision of the Administrative Law Judge (ALJ), denying her claims for disability, Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI). *See also* 42 U.S.C. §§ 405(g) and 1383(c). Based upon the court's review of the record and briefs submitted by the parties, the court finds that the decision of the ALJ is due to be affirmed.

**I.      Proceedings Below**

Plaintiff filed her applications for disability, DIB, and SSI on November 13, 2007, alleging a disability onset date of August 28, 2007. (Tr. 157-59, 160-67, 178). Plaintiff's applications were denied both initially and upon review. (Tr. 96-103). Plaintiff then requested a hearing before an ALJ. (Tr. 134-50). Plaintiff's request was granted, and a video hearing was held on November 13, 2009 (Tr. 24-62); in addition, a supplemental hearing was held on March

16, 2010.[1] (Tr. 63-95). In his decision dated April 14, 2010, the ALJ determined that Plaintiff has not been under a disability as defined by the Act from August 28, 2007 (the date when Plaintiff claims her disability began). (Tr. 178). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1), that decision became the final decision of the Commissioner and therefore a proper subject of this court's appellate review.

At the time of the hearing, Plaintiff was forty years old and had a tenth grade education. (Tr. 33-34, 189, 412). Plaintiff worked at a hosiery mill for eleven years, performing various jobs such as seamstress, sewing machine inspector, utility worker, and boxer/floater. (Tr. 169). Plaintiff testified that she experienced a neck injury from which she developed cervical pain, dizziness, and a seizure disorder while working at the hosiery mill. (Tr. 41). Plaintiff's medical conditions ultimately led her to quit this job. (Tr. 34-36, 196). During her last years at the mill, she performed less strenuous tasks such as order-checking and quality control. (Tr. 35). During all but the end of Plaintiff's eleven-year work period mentioned above, Plaintiff's work was classified at the heavy exertional level but was performed at the light, unskilled level. (Tr. 58).

She alleges her disability began in August 2007, due to intense and continuous pain in her neck, back, and arms and deafness in her left[2] ear. (Tr. 32-34, 178, 211, 281, 495). Plaintiff testified that her medical problems were the result of two neck surgeries (resulting from the workplace injury), thirteen knee surgeries necessitated by a 1986 four-wheeler accident, two heart surgeries, deafness, and seizures allegedly beginning in 2007. (Tr. 27, 29, 30, 33-34, 38-39). Plaintiff blamed her alleged deafness on a heart attack she had as an infant. (Tr. 31). When

---

[1] At the conclusion of the November 2009 hearing, the ALJ ordered Plaintiff to undergo both a hearing and neurological test, as Plaintiff claimed she is deaf in her left ear. (Tr. 61). The supplemental hearing was subsequently held to incorporate the results of these tests into the ALJ's hypothetical question to the VE.

[2] The hearing test ordered by the ALJ revealed that Plaintiff was in fact deaf in her right, but not her left, ear. (Tr. 574).

the ALJ inquired about her hearing problem, Plaintiff's attorney admitted having no document containing a diagnosis of Plaintiff's deafness as a child but stated that Dr. Thomas Krauss (whom Plaintiff saw for pain management) had made the notation, "deaf [left] ear," prior to a fluoroscopic cervical epidural injection. (Tr. 33, 473-75).

Plaintiff reported that she has two minor children, performs housework, and sometimes prepares and cooks meals. (Tr. 33, 52, 209, 213). Moreover, Plaintiff reported that she takes care of and shops for her own personal needs and drives to and from the grocery store. (Tr. 45, 52, 54, 208-09, 213).

While performing a mental residual functional capacity assessment, Dr. Robert Estock, the consulting physician, found that Plaintiff was "not significantly limited." (Tr. 435). Furthermore, the state agency consulting physician, Dr. Robert Heilpern, noted that Plaintiff has no manipulative, visual, communicative[3], or environmental[4] limitations. (Tr. 455-56). Dr. Heilpern further stated that Plaintiff's "statements about symptoms and functional limitations are only partially credible[,] as the severity alleged is not consistent with the objective findings from the evidence in the file." (Tr. 457).

During her alleged period of disability, Plaintiff received treatment from various physicians for neck, heart, pain, and neurological issues. Plaintiff was seen at the Northeast Orthopedic Clinic multiple times for her neck surgeries and follow-up visits to assess her cervical hardware. (Tr. 266-287). Dr. Daniel Ryan, who wrote Plaintiff's reports from this clinic, noted both an absence of any "mechanical explanation" for Plaintiff's continued allegations of pain and Plaintiff's refusal to participate in physical therapy. (Tr. 268). Plaintiff was also seen by

---

[3] In other words, she had no hearing limitation. (Tr. 456).

[4] The single exception to this finding relates to Plaintiff needing to avoid all exposure to hazards, such as machinery and heights. (Tr. 456).

Dr. Asim Khan at the Heart Center in Huntsville, Alabama for heart issues on August 18, 2009. (Tr. 565). Dr. Khan reported that Plaintiff's heart was healthy and that she should return to the office in one year for follow-up. (*Id.*) Plaintiff saw Dr. Thomas Krauss at the Pain Management Clinic in August 2009 in Birmingham, Alabama with pain. (Tr. 495-96). Dr. Krauss reported that the cervical catheter had given Plaintiff "significant benefit," as much as a fifty to sixty percent improvement in her pain symptoms. (Tr. 463). Plaintiff was also seen by Dr. Pamela Quinn, a neurologist, in Arab, Alabama, upon the request of the Disability Determination Service. (Tr. 329-72). Dr. Quinn reported that Plaintiff had a "lengthy discussion with [her] regarding disability" and that she "[does] not feel that [Plaintiff] is disabled."[5] (Tr. 333). Dr. Quinn added that Plaintiff is capable of returning to regular work. (Tr. 349).

Plaintiff's primary physician, Dr. Ricky Deerman, is a family medicine practitioner in Rainsville, Alabama. (Tr. 549). Dr. Deerman reported that Plaintiff's anxiety and depression could be improved with the "right combination of medications."[6] (*Id.*). Dr. Deerman's drug-based approach showed in the reports of Drs. Mary Arnold and Younus Ismail. Plaintiff saw Dr. Arnold, a psychologist, and Dr. Ismail, a quick care clinic physician, and the ALJ relied heavily on their reports. (Tr. 412-15, 566-67). Dr. Arnold noted that Dr. Deerman has Plaintiff on anti-anxiety medications and anti-depressants but that Plaintiff "reports no referral for mental health services." (Tr. 413). Dr. Arnold further noted that Plaintiff has "excessive caffeine intake," self-cares, and does household chores. (Tr. 413-14). Dr. Ismail, like Dr. Arnold, noted that Plaintiff has been placed on a regimen of psychotropic and seizure medications but that she has not "[seen] a psychiatrist on [a] regular basis." (Tr. 566-67).

---

[5] Of course, it was for the ALJ, not a medical practitioner, to make this ultimate conclusion.

[6] Plaintiff takes Dilantin for seizures, Lortab for pain, Lyrica for nerve pain in the neck, Toprol for heart arrhythmia, Xanax for panic attacks, and Zoloft for depression and anxiety. (Tr. 188).

4

Finally, Plaintiff was seen by Dr. Jack Aland and Dr. Ismail for hearing and neurological examinations ordered by the ALJ following Plaintiff's November 2009 hearing. (Tr. 61, 574-76). Dr. Aland diagnosed Plaintiff as being completely deaf in her right ear. (Tr. 574). Dr. Ismail diagnosed Plaintiff with seizure disorder, chronic neck and back pain, chronic extremity pain, and a panic disorder. (Tr. 568).

After receiving Plaintiff's hearing and neurological test results, the ALJ conducted a supplemental hearing on March 16, 2010. (Tr. 65-95). Based on Plaintiff's test results, the ALJ posed a hypothetical question to Vocational Expert (VE) John Lahn, asking if a person of the same abilities and with the same alleged conditions as Plaintiff could perform Plaintiff's past relevant work; the VE responded in the negative. (Tr. 63, 73, 77). The VE suggested office-type environments, as opposed to noisy factory environments, in accommodation of the hypothetical individual's partial deafness. (Tr. 77, 13). Additionally, the VE suggested "assembler jobs," or light, unskilled jobs, such as a position on a packing line or as a clerk/cashier, of which there are a significant number of positions in both northern Alabama and nationally. (Tr. 74-75). Plaintiff's attorney challenged the VE's response by opining that these jobs would be in noisy environments, rendering Plaintiff unable to communicate effectively with other workers. (Tr. 76). The VE countered that Plaintiff could perform many of these jobs in quieter environments. (Tr. 77).

Based on the VE's testimony and the medical evidence in the record, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff could perform, in conformance with the Medical-Vocational Guidelines provided at 20 C.F.R. Part 404, Subpart P, Appendix 2 and that, therefore, Plaintiff is not disabled. (Tr. 18, Findings Nos. 9-10).

**II.     ALJ Decision**

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R.  § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant

is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the present case, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since her alleged disability onset date and has a combination of the following severe impairments—post pacemaker insertion resulting from cardiac arrhythmia, chronic neck pain, and hearing loss—that satisfies the second prong of the analysis, as set forth in 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 13, Findings Nos. 2-3). With regard to the third prong, however, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-14).

First, the ALJ determined that Plaintiff's post pacemaker insertion status and problems with cardiac arrhythmia do not qualify her for disability under listing 4.05, because they do not constitute recurrent arrhythmias and are related to reversible causes. (Tr. 13). The ALJ apparently found Plaintiff's alleged arrhythmias to be reversible because Plaintiff's heart doctor, Dr. Khan, reported that he recommended that Plaintiff quit smoking and stop drinking caffeinated drinks. (Tr. 303). Moreover, the Dekalb Regional Medical Center reported that Plaintiff showed no evidence of arrhythmia. (Tr. 308).

Second, the ALJ determined that Plaintiff's chronic neck pain status does not qualify her for disability under listing 1.04 because she did not have one of the listed disorders "*in conjunction with* evidence of nerve root compression." (Tr. 14). In fact, Dr. Ryan at the

7

Northeast Orthopedic Clinic reported that he did "not believe [Plaintiff's] symptoms [were] emanating from her neck at all" and that he "[did not] have an objective reason to keep her out of work." (Tr. 266).

Lastly, the ALJ determined that Plaintiff's hearing loss, as analyzed under listing 2.08, does not meet the stated criteria of an "average hearing threshold sensitivity for air conduction of 90 decibels or greater and for bone conduction to corresponding maximal levels in the better ear, or speech discrimination scores of 40 percent or less in the better ear." (*Id.*) The hearing test performed on Plaintiff by Dr. Aland revealed that she has 100 percent discrimination in her better (the left) ear. (Tr. 574).

In the final steps of the analysis, the ALJ found that Plaintiff is unable to perform her past relevant work as a sewing machine operator or an inspector but that, based on the testimony of the VE and Plaintiff's age, education, work experience, and RFC, Plaintiff can perform the requirements of jobs such as production assembler, packing line worker, and order clerk/cashier. (Tr. 17-18); *see* 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a). Finding that "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," the ALJ determined that Plaintiff is not under a disability. (Tr. 18); *see* 20 C.F.R. §§ 404.1520(g) and 416.920(g).

### III.   Plaintiff's Arguments for Reversal

Plaintiff presents two arguments: (1) the ALJ's findings regarding Plaintiff's RFC are not based upon substantial evidence, and (2) the ALJ's decision contains a material error of law, in that the hypothetical question posed to the VE did not incorporate all of Plaintiff's impairments. (Pl.'s Mem. 9-10, 12). Plaintiff's main argument is that, even though the ALJ cited her post pacemaker insertion status, chronic neck pain, and hearing loss as impairments in his report (Tr.

13), he did not "take into account [in] the residual functional capacity assessment or in the hypothetical question to the vocational expert the issue of chronic severe cervical pain." (Pl.'s Mem. 9-10). It is Plaintiff's position that, because the ALJ's decision was "based…on vocational expert testimony," the ALJ "should have incorporated the severe chronic cervical pain into his questioning of the vocational expert." (Pl.'s Mem. 10).

## IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's

findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

V.     **Discussion**

After careful review, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the ALJ applied proper legal standards in reaching that decision. The court addresses each of Plaintiff's arguments below.

   A.     **The ALJ's Residual Functional Capacity Assessment (RFC) was Based Upon Substantial Evidence.**

Plaintiff's first argument is that the ALJ failed to account for her chronic severe cervical pain in her RFC. (Pl.'s Mem. 9-10). "Severe" impairments found at the second step of the analysis, however, do not necessarily "impose significant work-related limitations" for the purposes of the subsequent RFC and hypothetical question steps. *Walters v. Barnhart*, 184 F. Supp. 2d 1178, 1184 (M.D. Ala. 2001). Indeed, an RFC sets forth the "most [a claimant] can still do despite [her] limitations." *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). Still, all severe impairments found at step two should be incorporated into the RFC. *See Raduc v. Comm'r of Soc. Sec.*, 380 Fed. Appx. 896, 898 (11th Cir. 2010). The ALJ may thus "incorporate" a claimant's severe impairments into an RFC by acknowledging and weighing those impairments in his report, without the impairments necessarily resulting in an imposition of impairment-specific work limitations in the RFC. *See Walters*, 184 F. Supp. 2d at 1184; *Raduc*, 380 Fed. Appx. at 898.

Plaintiff's argument is an incorrect reading of the ALJ's actions, as the ALJ clearly considered Plaintiff's medical records, along with her other testimony and reports, in developing her RFC. (Tr. 14-17). The ALJ acknowledged Plaintiff's two cervical spine surgeries, cervical plating, and insertion of a cervical catheter for pain management. (Tr. 15). The ALJ also

acknowledged, however, Plaintiff's report that she had "received significant benefit from the catheter and that she had improved" and was "doing well overall." (Tr. 15). Additionally, the ALJ discussed Plaintiff's "normal gait" in spite of her "limited range of motion in her cervical spine," "minimal pain and tenderness," and lack of any "muscle spasm or deformity." (Tr. 16). The ALJ further acknowledged Plaintiff's receiving cervical epidural injections in 2008 and 2009. (*Id.*).

Additionally, the ALJ gave "significant weight" to the opinions of psychologist Dr. Mary Arnold and examining physician Dr. Younus Ismail, stating as follows: "[B]oth had the opportunity to observe and examine [Plaintiff] directly, as well as having the opportunity to review her entire medical file. Their findings are internally consistent as well as consistent with the evidence as a whole." (Tr. 17). The ALJ also gave significant weight to the opinion of Dr. Robert Estock, even though Dr. Estock did not directly examine Plaintiff. (*Id.*). The ALJ found that Dr. Estock gave "specific reasons for his opinions[,] indicating that they were based on the evidence of record" and issued opinions consistent with the rest of the medical evidence. (*Id.*). The third opinion given great weight by the ALJ was that of Dr. Heilpern. Again, although Dr. Heilpern did not examine Plaintiff, he provided "specific reasons for his opinion about [Plaintiff's] [RFC][,] showing it was grounded in the evidence of record." (*Id.*).

The ALJ concluded that Plaintiff's RFC was based upon the entirety of the evidentiary record and that, after reviewing not only Plaintiff's medical treatments, but also her own "report and testimony of her activities of daily living," he determined that Plaintiff had "greater sustained capacity" than she described. (*Id.*). Further, "the ALJ rejected Plaintiff's complaints of limitations beyond those included in the RFC assessment because he found that such complaints were not consistent with other evidence of record." (Comm'r Mem. 10).

Because the ALJ stated the weight given to the medical opinions and enunciated the grounds for his decision, his choosing not to mention Plaintiff's neck pain in the report did not constitute a failure to create an RFC that was "reasonable and supported by substantial evidence." *See Bloodsworth*, 703 F.2d at 1239; *Walters*, 184 F. Supp. 2d at 1184.

### B. The ALJ Did Not Err by Failing to Specifically Account for Plaintiff's Chronic Neck Pain in the Hypothetical Question to the VE.

Plaintiff's second argument is that the hypothetical question posed to the VE failed to "[take] into account all [of her] established limitations and capabilities;" in other words, Plaintiff alleges that her RFC was incomplete, so the hypothetical question was also necessarily incomplete. (Pl.'s Mem. 3). Plaintiff specifically cites the ALJ's failure to mention her chronic neck pain in the hypothetical question, despite identifying chronic neck pain among the three impairments in the ALJ's report. (Pl.'s Mem. 10). The Eleventh Circuit has held that an ALJ is not required to include findings in the hypothetical that he has found to be unsupported (and therefore not iterated in his RFC). *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). In the case at hand, the ALJ stated his reasons for finding Plaintiff's allegations of neck pain to be largely unsupported in her RFC. (Tr. 16). Accordingly, the court finds no legal support for Plaintiff's assertion that the ALJ's failure to specifically account for her neck pain in the hypothetical question constitutes a material error of law.

### VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The ALJ's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** on July 22, 2013.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE